arguing on behalf of the attorney, Mr. Robert Hoffman, arguing on behalf of the attorney, Mr. Adam Hoffman. Mr. Hoffman, you may proceed. Is it Hoffman or Hoffman? Hoffman, Your Honor. Thank you. Either is acceptable, so if it's more comfortable, don't fret it. Good morning, Your Honors. May it please the Court, Rob Hoffman for Walgreens. This case has taken an unusual route to this Court. The Supreme Court, in originally granting leave to review, clearly thought the standing ruling of the trial court merits fresh review. Now it is concluded that this Court should undertake that review in the first instance. And I want to suggest two basic approaches, both of which independently lead to the same result, that the trial court's ruling should be reversed. First, I want to talk about Greer and why its standard, requiring that plaintiffs allege a distinct and palpable injury in fact, remains the law in Illinois. Why Rosenbach did not discuss Greer, much less overrule it or alter that law. And I also want to explain why, if this Court agrees that the Greer standard still applies, plaintiff here plainly lacks standing. But that's not all. I also want to talk about how the U.S. Supreme Court's ruling in TransUnion changed the legal context of this Court's standing analysis. As this Court is aware, this case involved the assertion of a Federal claim in Illinois. And Fawcett, we now know, cannot sue in Illinois. When prior Illinois appellate courts confronted this question, that was an open question. Cannot sue in Federal court, rather. I believe the plaintiff has claimed that you have conceded that the preloaded debit card is subject to the Federal statute. Yeah, that's not been conceded. It's not an issue present at this procedural stage in the case. But we have absolutely, all the way up through, including a motion to dismiss that was denied, but we have preserved that issue. And we certainly continue to believe that the Federal statute doesn't even apply. If it isn't something that is subject to the provisions of the statute, then how does one state a cause of action if it isn't either a debit or a credit card in the sense of the definitions contained? It's our view that she hasn't stated a cause of action.  It's our view that she hasn't stated a cause of action. We filed a motion to dismiss on that basis. It was denied. Yeah, but that's not what we're here for. Correct. So we're setting that aside and we're assuming for present purposes only. We're not conceding it, but we are assuming for present purposes that there is a cause of action. We will deal with that later if we have to. I thought that some of the arguments that you raised were that as a, I think it's called precatory or prefatory. I confused those two. If you fail to state a cause of action, then you don't have standing. That's not the argument we're presenting here, Your Honor. And I do think you're correct that my opponent has suggested we conceded that the statute applies. We do not concede that. That is a suggestion they've made. We accept for present purposes that we lost the motion to dismiss. That's all. And we'll deal with that later if we have to. But we are still entitled to not have to face Ms. Fawcett because she lacks standing. And, of course, that results in the denial of, or should result in the denial of class certification. Am I correct in believing that no motion for summary judgment was ever filed? Not yet, Your Honor. So the answer is yes? Correct. Thank you. Yeah. So I want to talk about how the transunion changed the legal context of this Court's ruling. This is now clear that Ms. Fawcett cannot sue in a federal court. And taking the federal rule into account is consistent with prior practice of this Court when it's confronted similar issues. And it makes good sense. It avoids all sorts of practical problems. But ultimately, in light of transunion, Fawcett lacks standing in Illinois. Every bit as much as she lacks standing in federal court for a variety of reasons that I'll discuss. But let me start with Greer. I mean, is it your contention that Illinois and the federal landscape post-transunion is one and the same? No difference? So my view is that on standing, it has always been the case since Greer that Illinois courts look to federal courts for guidance, but it doesn't mean that their standing rules are the same. But there's a second rationale in transunion that is critical, and that's the separation of powers rationale. That has a significant impact. And even before you get to the separation of powers rationale in transunion, there is a general approach that Illinois courts have wisely taken with respect to federal statutes and others, where they take into consideration what the federal rule is, because uniformity in the application of federal law between State and federal courts is a recognized value of both the U.S. Supreme Court in the band of Choctaw cases and the Illinois courts. I can see that on merits issues, if you will. But at standing, we have to adopt the federal standard in violation of Article 2? Yeah. To be clear, I don't think you need to go there because of Greer. And maybe that's where I should begin. I think the Illinois rule on its own very easily and very cleanly takes care of that, takes care of this, right? Because here's what Greer, you know, as we know, the Greer standard requires a distinct and palpable injury in fact, among other things. But distinct and palpable injury in fact is one of them. And what qualifies as a distinct and palpable injury in fact has been discussed in numerous cases over the years. And without fail, again and again and again, there are no exceptions, Illinois courts have looked for some consequence of unlawful conduct affecting an interest of the plaintiff. It could be tangible. It could be intangible. That doesn't matter. But there has to be some consequence that impacted some legally protected personal interest. Now, the plaintiffs proposed the following rule. This is at page 15 of their brief. A violation of plaintiff's statutory rights alone is sufficient for plaintiff to sue. And what I want to tell you right off the bat is that can't make sense of Greer. Greer was a statute, was a claim brought under an Illinois statute. Yet Greer is the case that illuminates, describes the purposes of, explains the value of, and the longstanding tradition behind Illinois' distinct and palpable injury standard. It didn't just say. So how do we then look, ignore six flags? So Rosenbach, right, so that doesn't make it clear. Right. Well, it was pretty clear about what? It was pretty clear about the word aggrieved. That's not, it doesn't cite Greer. If it's going to change Greer, it would cite Greer. If it's going to discuss standing, it would talk in the language of standing. It's not a standing case. That case came up on a 2615 motion because the word in the statute that created the cause of the action was aggrieved. Aggrieved is not a word in the distinct and palpable injury standard setting. It's a different word. I know it is Greer who uses the word aggrieved. Well, Greer uses the word aggrieved in passing as sort of synonymous and meaningfully similar, but. In relation to standing. But then let's be clear about what's the difference between. So start just procedurally. No mention of Greer. No change in the law. No suggestion of a change in the law. It's not even the right procedural posture for a discussion of standing issues because it's the wrong kind of motion. Right? Now let's look at the interests involved. Again, if you're taking Greer seriously and you want to look at what's a particular interest. Rosenbach is very, very detailed and specific about this, even though it doesn't have to be. We're talking in Rosenbach about biometric information. Information that Rosenbach describes. Excuse me. Sorry. That Rosenbach describes as unique, personal, and unalterable. Right? What is it about unique, personal, and unalterable information that's different from, say, information at issue here, which there's no dispute about. Right? The information issue here is the truncation requirement of numbers that have nothing to do with Ms. Fawcett. Numbers that don't identify her, don't identify any of her assets, don't give anybody any information about her, and don't in any way pose a threat to her. Nothing. Nothing. That's this case. Rosenbach involves that kind of unique, personal, and unalterable biometric information, which the Supreme Court, paragraphs 34 and 35 of the Rosenbach case, says the invasion of any kind of improper access to that information, any kind of improper storing of that information, or any kind of improper, much less use and transfer of that information, all of that is a, you quote, real and significant injury. In other words, the General Assembly recognized in BIPA that biometric information is kind of like the new property. Right. But in 6-5, there was no actual injury. It was a statutory violation. But that's my point. My point is, just like in trespass, when in, you know, common law tradition, you have property rights, trespass, you drew the line. It doesn't matter if there's any actual injury. Somebody crosses the line, that's an invasion of the right. You have standing to sue. It doesn't, what you get from it, that's another question. But you have standing. Basically, the General Assembly said, BIPA information is like that. BIPA information we need to protect in the same way we protect property. Not a crazy idea. Not necessarily an idea that's required, but not a crazy idea. Does it have to be personal? It does. A hundred percent. A hundred percent. It has to be personal. The Supreme Court discusses the General Assembly's comparison of Social Security numbers and the BIPA information. Even Social Security numbers, which are personal but alterable, are not considered as sensitive. Are not considered as sensitive. So if even Social Security numbers are different and fall short, certainly the information we're talking about in this case, not every fact to case, but this fact to case, where it's just information that has no connection to the plaintiff whatsoever, there is no argument that she has been impacted, even in the trespass sense of, this is my personal information, which you now have, but you're not entitled to. You can now restore it somewhere, and you're not entitled to do that. That's a real and significant injury according to the, at least, it's not been a holding yet, appeal in the Supreme Court, but it's certainly put its foot down and laid the groundwork to potentially reach that conclusion. The important thing to draw, Judge Jordanson, and I don't need to talk over you if you have a question, is that there's nothing about ruling for us that there's no standing in this true no-injury case that threatens BIPA enforcement. Well, I would, the plaintiff suggests, or maybe just bluntly states, that if we adopt the concrete injury test, that there'll be subsections of BIPA that won't be, you won't have standing to afford. Completely disagree with that, Your Honor. Completely disagree with that. The Illinois Supreme Court is going to have to answer this question at some point squarely, I suspect. But first of all, I don't think we're asking you to adopt the Greer standard, Your Honors. You have to abandon the Greer standard for us to lose. Let's be clear about that. There is no case, Rosenblatt included, there is no case where you can find the no-injury plaintiff like Ms. Foster is allowed standing in Illinois. And in fact, there are cases like Greer that do not make sense, that do not make sense. One thing about Greer is, there, the injury was alleged diminution of property values.  There was no discussion about how imminent it was. Courts didn't seem concerned at all. They just said, hey, these people live nearby. They could be affected by this development. And that's significant. I don't see Greer as in any way suggesting or gesturing towards TransUnion. I don't see that. Well, I don't see Greer as in any way gesturing towards Ms. Foster's kind of no-injury case. That's the point. There's no reason to even entertain the discussion about the financial interest. Classic, classic personal interest. Financial interest in the outcome that's impacted by the conduct. Right? No reason to have a discussion if the rule is a violation of a plaintiff's statutory rights alone is sufficient to confer standing on a plaintiff. It's just neither here nor there. And how much of a leap is it to say the legislature has declared this as a privacy concern? Well, the legislature hasn't declared this to be a privacy concern. And she is aggrieved by the violation of the statute. What's wrong with the court assuming that the legislature has the ability to say, you have this right? Well, without getting into the Article II problem that TransUnion discusses, which I'll get to in a moment, just starting initially, the legislature, in fact, in the truncational requirement, did not say that this kind of FACTA case, that for printing just the bank information number in addition to the last four digits, is a privacy interest at all. It didn't say that. There's no findings to that effect. There's no more than five. But there's no papers. And it gives that, and I don't mean to, this really goes to the core of my question. No more than five. It doesn't say the first six aren't a problem. Don't worry about that. And then it does give this private right of action with statutory damages. But what it says, and this is, again, you know, this is the part of the TransUnion rationale itself, it doesn't say that this has anything to do with you. It's a regulatory requirement. Laws have to draw lines somewhere. But not every line that's drawn by the law impacts a personal interest. But when it gets a right of action, in Illinois at least, saying you have jurisdiction over this, that's a subject matter jurisdiction question. It's a separate set of questions. What is the standing? Who is the right party to bring this to? I see my time has expired. I don't want to go too long. But with your indulgence, I would like to address the Article 2 rationale very quickly. Here's the basic intuition that TransUnion says. This distinction that we were just talking about, right? I run a red light. If I run a red light, I get a ticket, and there's a camera there. I get a ticket. I have to pay the ticket. There can be nobody around, absolutely not a soul affected, right? That's law enforcement. That's regulatory enforcement. That's Article 2. That's an Article 2 exercise of judgment about how to enforce the law against running red lights. If somebody is standing there, you know, a half a block away and takes a picture of me running a red light, same picture. Same picture. That person has not been injured by my running a red light. They don't bring a private lawsuit. It's the difference. And what the Supreme Court said in TransUnion is Congress didn't mean to do this. So, in a way, you can just put this case to bed as a matter of statutory construction. You can put it to bed as a matter of uniformity between federal and state law. You can put it to bed as a matter of rear or low, which we think is the best answer because Rosenblatt doesn't change rear. But you can also put it to bed on this rationale that the Supreme Court has said Congress can't do this. Congress can't take a ‑‑ if somebody is injured by this truncation requirement violation, then you have a conflict that's entitled to private enforcement. But if someone is not injured, you still have a violation. But the enforcement of that violation must be left to Article II authority. It cannot be given over to private parties. That is a square holding at page 429 of the TransUnion decision. And this Court has obliged to respect that as well. All right. So your position is under TransUnion case, they said Congress cannot create a private cause of action. For a pure voluntary plaintiff like Ms. Foster. Any more questions? But does that mean that ‑‑ or is it your position, then, that they did not leave the question open for the states to interpret it as they wish? It does mean that, Your Honor. States are free to have their own standing, but they are not free to enforce unconstitutional federal statutes. And if you construe this statute to grant a pure no‑injury plaintiff the right to sue, which we don't think you should, then it is an unconstitutional statute and you can't enforce it. Any other questions? Because it's a violation of Article II.  Okay. Any other questions? Nothing. If I understand your argument, it is that Rosenbach related to information that constituted identity or personal information on the plaintiff. And in this case, it is distinguishable on the basis that the numbers on the receipt might identify or might result in the gleaning of the identity. But there hasn't been, in this case, an acquisition or accumulation of the personal information that is the identity under Rosenbach. I think I agree with you. I just want to be ‑‑ let me restate it so that I'm clear. Well, you can tell me what you think. But I think I agree with you. The information at issue here, the whole set of information might raise, there might be an invasion of a genuine personal interest with all of the information. But this information, the BIN number alone, which is the only thing at issue here, in circumstances that are demonstrated, and we have expert reports and we have the plaintiff's submissions and all of that cited in the record and cited in the briefs, this information that's at issue in this case doesn't have anything personal involved at all. Rosenbach necessarily, every single case involving BIPA information, involves the invasion of a truly personal, unique, and unalterably identifiable personal interest. And the General Assembly is entitled to say, your fingerprint, for instance, your fingerprint, we're going to protect that the way we protect the property line of your home. And if somebody crosses it, if somebody gets access to it that they're not entitled to, we're going to say, you can sue, the same way the common law treats the property line of your home. But nobody has ever said that about something that has nothing, literally nothing to do with you. That is the quintessential, irreducible minimum of standing. It must have some kind of personal connection to you. And the conduct division must invade something personal to you, an interest. You indicated that the first six numbers are a bank number, is that correct? Yeah, right. Do all the cards issued by Walgreens have the same first six numbers? I'm not 100% sure, Your Honor, but I don't believe so. Well, my point is, is there only one financial institution or one bank, or are there multiple banks? Well, there's only one bank that has that number. But I don't know, I'm not 100% sure, and I don't recall from the record, whether Walgreens sells cards and reloads cards from other banks. I'm happy to look, I'm happy to find out. If there's only one bank, then anybody who applies for a card would know what the first six numbers are. Is that true? Anyone who receives one, yeah, I suppose. Why would there be a different set of six numbers if it's a bank number and there's only one bank? If there's only one bank, everyone who receives a card would know everybody else's first six numbers. That's true. Any other questions? No. Thank you. You have an opportunity to make a vote. Appreciate it. Thank you, Your Honor. Mr. Vaught, is that how you pronounce your name? Is that German? Well, Your Honor, yes, it's technically Prussian. It came here quite a while ago. Do you know what it means? My understanding is it was a Prussian guard. That took the name for the person guarding the king. Thank you. You may proceed. Thank you, Your Honor. May it please the Court. Adam Vaught. I represent Kayleigh Fawcett. And as counsel started, this case does come to the Court in a somewhat unusual posture, where it was in the Supreme Court and then they sent it back here. And we went in the briefs for this Court. In the first instance, we would have led with this Court's decision in Soto v. Great America because it's directly on point with the issues that are raised by Walgreens on appeal. Now, I understand that the Supreme Court vacated Soto, but that was a part of the settlement. It wasn't to suggest that the Court was wrong. It was just part of the settlement. But in Soto, the plaintiff alleged a violation of FATCA, had gone to Great America and bought food. They got a credit card receipt with the first six and last four digits. Same thing here. There's ten digits that are alleged to have been used. The defendant argued there was no standing because there was no initial harm. They said nobody had received this information. That's the same thing that Walgreens states here. However, this Court, looking at Greer, said first that state court doesn't have to follow federal court on principles of standing. In fact, the state courts have said that we don't, especially in Greer. The Supreme Court decided not to adopt the zone of interest test that was set forth in data processing by the U.S. Supreme Court, which is, of course, the case where injury in fact first appeared. And additionally, the Court said that the violation of the statute was what caused the injury, and it relied on Rosenbach. And on that basis, the Court reversed the circuit court, which had determined that there was no standing and remanded it back. That is exactly what is before this Court right now. Fawcett has alleged that Walgreens printed in excess of the five digits that Congress said is the maximum. They did the first six and the last ten. Walgreens argued that she has not alleged an additional injury, which was what President Soto, yet Soto, following the Fifth District and Lee, which followed the First District and Duncan, all found under Illinois law that there is standing because of the statutory violation. And that follows what Illinois law has been. I know we've spent a lot of time in the briefs talking about Greer, but Greer said specifically that in order to have standing, you have to have some injury in fact to legally cognize interest. But both state and federal courts have said injury in fact doesn't necessarily mean the same thing in federal court that it means in state court. The Soto District Court decision, which remanded to the Lake County, which came up to this Court, Judge Dow said that, you know, you don't define it the same way. The Seventh Circuit in Brant says that state court doesn't necessarily have to find injury in fact the same way. The Supreme Court in Orozco said that state courts, you know, are free to have different standing requirements. And instead in Greer, the Supreme Court said in Illinois law, to the extent that standing is different from federal court, it's for greater liberality to allow more people into court. So Walgreens is here stating that the state and federal courts say injury in fact is different under Illinois law than it is in federal court. And Illinois courts have always said a statutory violation alone is sufficient, but somehow it is now different based on transunion. And I think counsel recognized that transunion has changed everything, though in the briefs we're kind of talking past each other, acting as though we had the side that has always been right. But transunion did change things. In fact, Justice Thomas' dissent specifically stated that never before had the court said that a statutory violation isn't sufficient alone to create standing. So if you look at Rosenbach, there's a lot of discussion of Rosenbach, of course. Counsel argues that Rosenbach didn't change anything in Greer, but you have to look at the procedural posture of that case. It went to the Supreme Court after the appellate court had found that the plaintiff was not aggrieved because the violation of the statute wasn't accompanied by an additional harm. And the Supreme Court specifically reversed that, stating the violation of the statute in and of itself is what makes the person aggrieved. However, does it matter that what was at issue there was, as I recall, fingerprints and maybe retinal display? At any rate, something very personal to you that can never be changed. I can never change my fingerprints. I can never change my retina. Does that make Six Flags different? No, I don't believe it does. Why not? Well, one, they didn't get to that specificity that, you know, because this is a fingerprint. Nonetheless, that was the fact pattern that the court had before it. This was perhaps the most personal information that you can, other than your DNA, that you can lose. Tell me why it doesn't matter. Well, because BIFA has five sections that have different violations of it. One is you have to have a policy. Well, a policy isn't unique to you. One is that the company has to have a destruction policy. I mean, that's not unique to the individual. And, in fact, if you're looking at the standing analysis, I mean, the Supreme Court in Rosenbach never differentiated between A, B, C, and D at BIFA. They haven't in Cawthorn, where they were talking about damages, they didn't revisit it. In Tim, what is the statute of limitations? They weren't separating between the individual sections. And, in fact, in federal court, the courts have found that A and C are not, you know, in certain cases, I know counsel argues that in other cases the court has found standing, but they've said that there's no actual harm for A and C, but they have found B and D. The Illinois Supreme Court has never differentiated that way. And, furthermore, while, I mean, your fingerprints and your red ones are unique to you, I mean, your account information is unique to you as well. But it can be changed, is my point. It can be changed. I can change banks. I can close an account. I can decide to put cash under the mattress, but I can't change my fingerprints. That, to me, seems like a significant difference. Well, I understand your point, but you have to consider what the posture is, is that in BIPA, the Illinois legislature, the General Assembly, decided that this is a right that needs to be protected. In FACTA, Congress decided that protection of your financial information is a right that needs to be protected. And Congress provided that if that right is violated willfully, then you can seek damages between $1,000 to $1,000 of statutory damages, which you can also plead additional damages for actual damages as well. It's an either-or. It's an either-or. Yes. And, in fact, in BIPA, it's just $1,000. There's no range, you know. So I know when there's arguments on damages, they have a due process argument. And then also, actually, even like the actual concrete harm analysis really just kind of goes to damages. When you look at Greer, which says they reject the zone of interest test because it confuses the merits versus standing. I mean, here they're saying, well, she says, well, she doesn't have actual harm. Well, that's a damage question that can go to whether it's between the $100 to $1,000 range. What's the right to be protected here? Your financial information from being potentially stolen and used for identity theft. It is a preventative matter. It's a preventative statute. And, in fact, this Court recognized in SOTO that its standing analysis actually supports Congress's preventive intent in creating the FACTA statute. Does it matter that FACTA's federal and BIPA was state? No. Under the Supremacy Clause, state courts are bound to follow federal law and to enforce federal law, absent some, you know, general technical procedural rule. But otherwise, you know. It almost seems like the other side is saying we need to follow their rules on standing. Well, you need to follow Congress's statute. TransUnion decided Article III jurisdiction. The Supreme Court decides, you know, how to interpret Article III. But Article III isn't present as an issue for this Court. This Court is concerned with the jurisdiction found in Article VI, Section 9 of the Illinois Constitution, that says rather than case or controversies, the circuit court has original jurisdiction over all justiciable matters, with the exception of the Supreme Court's original exclusive jurisdiction for legislative redistricting and removal of the governor. But other than that, as long as a claim is justiciable, you can bring it in court. And in Belleville-Toyota, the Supreme Court said the legislature, and in this context whether it's the state or federal legislature, if they have created a right through a statute with a remedy, the violation of that right creates standing. So it doesn't matter if it's a federal statute or a state statute. The same principles apply. If there's a violation of the statute and you plead that and it comes with statutory damages, that's sufficient for the cause of action. That's sufficient for standing. So you think we're allowed to apply our own standing law? We don't need to import the federal standing requirements? Yes. The Illinois Supreme Court, the U.S. Supreme Court, the appellate courts in this state, the Seventh Circuit, they've all said that Illinois can have different standing requirements, jurisdictional requirements, than federal courts. I mean, federal courts are courts of limited jurisdiction, or state courts are courts of general jurisdiction. I mean, at the founding, it was unclear what the federal courts were going to look like, which is why in the Supremacy Clause state judges have to swear an oath to uphold the Constitution of the United States for this very reason that if they're called upon to enforce federal law, they have to have sworn an oath to the federal Constitution as well, rather than their own state particular interests. And, you know, the U.S. Supreme Court has said that when Congress passes a law, it's as much a policy of the state as if the state's own legislature passed it, because Congress is creating a federal policy, not just a localized state, but because all states are part of the union and have, you know, all adopted the Constitution, they're bound by it. And so that's why this Court was absolutely incorrect on SOTO, that there is standing simply because there's a violation of a statute that's been alleged, and it provides statutory damages. Under Illinois law, the injury is the invasion of the right. Harm is separate. That goes to damages. But the federal courts, especially under TransUnion, have now created injury in fact to have a concrete and particularized component. And particularized under Illinois law, you just have to be distinct and palpable, which just means it has to be, you know, to you. So Ms. Fawcett has a card. She went to Walgreens. They printed off ten numbers. So it was her card, her number, a violation of her right. I mean, to counsel's point that on the Article 2 question, you can't just create this generalized rule that anybody can sue for any reason. Like if I was standing behind Ms. Fawcett in line and saw they printed ten numbers, I can't sue on her behalf because it's not a violation of my right. You know, I can't go and, you know, sue Apple for, you know, for a violation. I mean, I trust law, but, you know, because that would be the Department of Justice. But when you have your own right that Congress has identified and it's violated, you should be able to come into court to, you know, adjudicate the violation of that right. Counsel? It seems that your argument is based upon a premise that you haven't really stated. And that is that it's the defendant's responsibility to go forward and establish lack of standing. It's a negative instead of proving a positive. And what the trial court ruled or ordered or decreed was that the defendant hadn't sustained its burden. It would seem that if we determined that the trial court was wrong, your house of cards falls apart. To the extent that we determined that the trial court was wrong, they did prove lack of standing, and therefore we should reverse. Now, is there some forfeiture involved here, or is there a waiver? Is there anything that you want to respond to insofar as what I've just related and suggesting to you that your entire argument is based upon the assumption or the presumption that the trial court did not commit error insofar as determining that the defendants failed to prove lack of standing? To answer your question, Your Honor, I would say first, this goes right into the difference between federal standing and state court standing. So, as you are correct, under state law, it's an affirmative defense that has to be raised, and if it's not raised, it's waived. Under federal law, standing is jurisdictional. It can be raised at any time. Even in the U.S. Supreme Court, you can argue standing has been lost in a private court of jurisdiction. That's not how the law works in Illinois. Now, to the specific point, have they, you know, if you were to find that a lack of standing and they reverse, I mean, I would say this. One, under Rosenbach, the violation in and of itself is the injury. Rosenbach was clear. And if that wasn't clear enough because it's BIPA versus FACTA, this court was certainly correct in Soto. The First District was correct in Duncan. The Fourth, Fifth District was correct in Lee. But also to go beyond the mere, you know, technical violation, in her deposition, Ms. Fawcett did say that identity theft is her biggest fear. And I know he likes to refer to somebody as, you know, having a no-injury plaintiff. But, you know, Ms. Fawcett lives on what, you know, might be described as the outskirts of the financial system. You know, she testified she wasn't able to get a bank account, but in order to get paid for DoorDash, she has to have this card. I mean, this is her bank account, this card. And so the possibility that her identity could be stolen, that those numbers could be stolen, that money could be taken away, I mean, these cards don't necessarily provide the benefits that the credit cards we may have as far as FOD. So, you know, there is more than simply just a violation. I mean, she has testified that, you know, she is fearful that what had happened can cause her to lose, you know, her identity, have her money stolen. And I know, you know, counsel's brief says that the only people who saw her were the clerk and her lawyer and her. I said, well, that, again, it kind of collapses merits into standing because, well, the clerk saw it, and Congress said we don't want people to steal your identity. I mean, it's the numbers in the system. You know, is it two people have to see it, three people have to see it, five? I mean, there is no lying here, as opposed to the simple rule, is that Congress identified a right. That right is alleged to have been willfully violated, and it provides statutory damages. The rest can go to merits, go to damages. The question here is, does she have the right to come in court? Does she have standing to, you know, vindicate her rights? And the court should absolutely find yes. And so I understand the question. If you were to find that the trial court was wrong, it's to come back to the House of Cards Hall. Yes, but there's a lot more here than simply ten digits on a number. I mean, these were rights that provided her for Congress, and she has sought, you know, to vindicate those. And, again, I would just, you know, direct the court back to Soto. I think you're perfectly right, Ben. Nothing has changed. And, you know, you should follow the analysis of that opinion. I would like to address the Article 2 argument, since counsel raised that at the end. You know, TransUnion does not state that FACTA violates it. Thank you, Your Honor. TransUnion did not say that FACTA violated Article 2. It made the point that Congress, without the concrete harm analysis, Congress could just deputize private people to act as the attorney general without anything else. Under Illinois law, though, that is protected by the distinct and palpable issue, which says that under distinct and palpable analysis, it has to be a harm, a violation to you personally. As my prior example, Ms. Fawcett has standing because it was her rights. Me standing behind her in line, I can't sue on behalf of her for her rights. And furthermore, you know, the TransUnion holding is no concrete harm, no standing. That's squarely in Article 3. So the fact they raised an Article 2 potential issue on what Congress may or may not do, it has no bearing on the holding. Certainly it doesn't bind this court to find that FACTA violates Article 2, because the Supreme Court has them. To my knowledge, no federal court has even said that. So my time is up. Unless there's any questions, I would sit. We would just ask that the court affirm. Thank you very much. Ann, do you have any questions? No, sir. I do not. Barbara? No. I have a question, Mr. Brown. I asked a question of Mr. Huffman, and I'm asking it of you, and that is, is there only one bank involved here, meaning that the first six digits of every card that Walgreens puts out is the same, in the sense that anybody who applies for the card will know the identity of the bank, and the six numbers in the front of the card? Correct. I would say this. I don't want to say it's something I don't know for sure. I believe there are multiple banks. I do know, however, that even individual banks will have multiple six-digit numbers. It's not just Chase has six digits, and Bank of America has six districts, and Elgin State has six digits. There's a number of cards that I've had since the late 60s. Did they have credit cards then? Yeah, they did. They also had letters of credit from the Knights Templar. But the thing was is that since then, and I'm letting out a big secret now, my first four digits of my Discover card is 6011, which I believe to be an indicator of Discover. And the other card companies have their own distinctive numbers. Am I incorrect? No, you're correct. They have distinctive numbers. I would say I've had multiple Chase cards, and I've had fraud, so they send me new cards, and I've got new cards with new six-digit numbers, you know, new numbers on the first six digits. But also, you know, we've also gotten a lot more protected by this information. I'm old enough to remember in college the identification number we all used to sign up to class was our Social Security number. I mean, they were on our IDs, and now, you know, those Social Security numbers are put under lock and key. And I think this comes out of what the Congress was doing in 2003, is just trying to protect this information, whether it's the same six digits or one bank, whether it's all banks. It's the more numbers that are hidden, the harder it is to try and figure out the lock. And so by saying no more than five, didn't matter if it's the first five, the last five, the middle five, they're saying five, that's it. Congress made that determination. And to suggest others just getting into the merits of the claim. And I think Congress has passed a law that provided statutory damages. If she proves the violation, the court should, you know, find it in her favor. Thank you. Does your brief, excuse me, I did think of something. Do you make the point in your brief that at the time FACTA was adopted, that the test in federal court for standing was more liberal, to use a loaded term? Yeah, I mean, so if you look at even the U.S. Supreme Court in data processing, it said that Congress can create rights. I mean, in Warth, which applied that, because data processing was involved with the Administrative Procedures Act. But then in Warth, the court adopted the concrete harm and then particularizes analysis within the federal Article III standing. But it also said that Congress can create rights. And Lujan, the court, which is sort of the defining standing case, also said that Congress can identify new rights, a violation of current create statute. And even Spokio, which preceded TransUnion, the court at least gave homage to Congress being able to identify new rights. It wasn't until TransUnion that this concrete harm argument by the U.S. Supreme Court said you have to have something in addition. And even Justice Thomas, joined by Justice Breyer, Sotomayor, and Kagan said this is the first time the court has ever held that. So in 2003, to the point Congress didn't intend Illinois or the states to be handling this, in 2003 it didn't seem to be a question. And those cases were litigated in federal court for years until Spokio and the TransUnion came around. So, you know, yes, to answer your question, yes, in 2003, these cases could be more tried in federal court. I believe the defendants made claim that in class actions, there needs to be some sort of higher scrutiny relative to whether or not there's a cause of action stated. Do you remember that argument? I don't remember that specifically. I mean, the class representative has to, you know, have standing, has to have a claim. I don't remember anything about a heightened scrutiny of... It seemed to me that what he was arguing related to a higher standard or burden of proof relative to 615 and 619. You don't remember anything like that? Well, I mean, if this was coming up on a motion to dismiss, I mean, if it's 615, you know, you're attacked. At 619, you have to admit essentially standing in order to even bring in, because you're bringing in an outside affirmative matter. I mean, this is coming up on class certification. Class certification generally is an abuse of discretion standard. Here, standing specifically to whether or not you have to plead an additional harm seems to be a question of law, which would be, you know, de novo. But to the extent you're getting into facts, then I think, you know, it gets into an abuse of discretion standard. So I don't know if it's necessarily heightened. I think it's more difficult for the court to, the appellate court, to review a class certification than like a motion to dismiss just based on a general standard review. You mentioned de novo review, did you not? Yes. Because this is a question of legal interpretation, does Illinois require anything beyond a statutory violation to establish... If it's just a de novo review, we don't give deference to what the trial court's ruling was. Is that not correct? No, that's correct. But if it were to actually get beyond just the legal question and get into a factual analysis, then I think that the abuse of discretion standard does start to kick in because now the court has resolved facts. But to the narrow question, at least presented in the briefs, is as a matter of law, does Illinois require more than an allegation of violation that's paired with statutory damages? That legal question is de novo. Thank you. Any other questions? No, sir. Thank you.  Mr. Hoffman, you may proceed with rebuttal. Thank you, Your Honors. I'll try to be brief. Let me just begin, Justice McClaren, with your question about other banks. The specific banking issue here is Green Dot, and Green Dot's numbers are all the same. Everybody who gets a Green Dot card, but there are other banks who have their own numbers, and it is possible that some banks have more than one card program, which would mean that maybe the last two of the first six would change, but the first four would remain the same. But the basic point, the basic insight that I understood you to have is correct. When you get a card, you receive the first six numbers. You are not the only person receiving a card pursuant to that card program. So everybody else who's in that same card program knows the first six numbers of your card. That's just true. Are you telling me that there are multiple classes? No, I'm telling you there's no class. Well, my point being that if there are different institutions, banks, that are holding the prepaid cash or dollars, then would those people having the same ten, or not the ten digits, but the same six digits constitute a class? Are you opposed to a different set of class that had different six numbers? I can see why it's tempting to draw that, to just sort of bucket them by the numbers that were disclosed, but our point is that every single person whose first six digits were printed on this receipt is uninjured. So they all are not appropriate members of a class because none of them have standing. Regardless of which institution is involved. Correct, correct. And this goes straight to Justice Jorgensen's question about what's the right to be protected here? And my friend's answer was the right to be protected is your financial interest and identity theft. Well, there is no impact on your financial information interest, the protection of your financial information. None. We have proven that. And Justice McClaren, it was our burden, but we went out and proved it, and they came back with no evidence to the contrary. There is no impact on Callie Fawcett's privacy of her financial information. There is, she claims a risk of identity theft, but this court in Maglio said, my fear of identity theft, which, by the way, entirely reasonable. I fear identity theft. I think we all appropriately are concerned about identity theft in this age. But what happened, the conduct at issue here had not one iota of impact on the risk of identity theft that she faced. Again, we proved this. We carried our burden with respect to this. This is a pure no-injury class. In Maglio, does it make any difference that in Maglio there were, like, five different causes of action, including, I think, negligent invasion of privacy, maybe? I might be overstating. I don't think so. I guess this is merely my question to you. None of the causes of action alleged there is, was there a legislative directive that of specific damages, that damage range? You either got actual harm, like FACTA, actual harm, or the statutory damages. That wasn't present in Maglio. Well, I think, I think, I don't think, I don't think anything turns on that. Because I think the point that I'm trying to make is that Maglio says you can't just stand up and say, I have a subjective concern about X and have standing. You need something else. Now, it's true that Congress here says, you know, you have, or at least arguably says, I think at the TransUnion it doesn't say that you have a right to $1,000 for a willful violation if you are a pure, no-injury plaintiff like Ms. Fawcett. I don't think that happened. But even if you think Congress meant to do that, and this goes straight, you know, I understand my friend said the Supreme Court has not held that that would be an Article II violation. I'm just going to, I decided to just bring it up and read it so it's clear. A regime, this is a quote from page 429 of the TransUnion decision, a regime where Congress could freely authorize unharmed emphasis in the original plaintiffs to sue defendants who violate federal law not only would violate Article III, but also would infringe on the executive branch's Article II authority. That's right there in black and white in TransUnion. That is binding law in this Court, in every court throughout the country, because that's the U.S. Supreme Court interpreting the Federal Constitution, which controls the range of application of Federal statutes. Any other questions? No, sir. I did want to mention how excellent the briefs were in your case on both sides. Absolutely. They are some of the best briefs we've read in a long time. Well, that's a very kind, kind thing to say. Thank you so much for that, Your Honors. All props to Mr. Conrad, my colleague, who was a key drafter of those briefs as well. I don't think you mentioned the Supremacy Clause during your argument. Right. Correct? Correct. Where in your argument would you insert it? I don't know that I need to insert it, except in the sense at the Article II level, where, well, at both the Article II level and the constitutional avoidance canon of Federal statutory construction, so that the Federal statute means only what the Supreme Court says it means and only what, and that applies across the board, and it means it everywhere. And in this case, it means that unharmed plaintiffs may not sue. Any other questions? No, sir. Thank you. We'll take the case under advisement. This is the last case on the call. Court is adjourned.